**GAROFALO, Appellant,**

v.

**CHICAGO TITLE INSURANCE COMPANY et al., Appellees.**

[Cite as *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68060.

Decided May 23, 1995.

**98**

*Luigi Garofalo, pro se.*

*Steven E. Elder,* for appellee Chicago Title Insurance Co.

*Kohrman, Jackson & Krantz* and *Sarah Gabinet,* for appellee Applied Mfg. Realty, Inc.

*Victor Wertheimer,* for appellee Alan R. Daus & Associates, Inc.

*Russo, Roth & Company* and *Daniel M. Roth,* for appellee Dario Fonovic.

HARPER, Judge.

Plaintiff-appellant, Luigi Garofalo, filed a complaint in the Court of Common Pleas of Cuyahoga County on May 12, 1994 against defendants-appellees, Chicago Title Insurance Company, Alan R. Daus & Associates, Inc., Dario Fonovic and Applied Mfg. Realty, Inc. Appellant advanced claims against the defendants in connection with an aborted sale of real estate. All of the defendants filed

dispositive motions, *i.e.*, either a motion to dismiss or for summary judgment, which were granted by the trial court in July 1994.

## I

Applied Mfg. Realty, Inc. ("Applied") owned real estate located at 21500 St. Clair Avenue, Euclid, Ohio ("the property") which was put up for sale. Alan R. Daus & Associates, Inc. acted as the real estate broker for the sale of the property.

Appellant and Fonovic made a written Offer, Receipt and Acceptance for the purchase of the property on May 26, 1993 for a total purchase price of $210,000 ("the agreement"). Applied accepted the offer on or about the same date. Pursuant to the terms of the parties' agreement, appellant and Fonovic deposited $5,000 as earnest money.

The agreement included an Addendum to Offer which contained the following provision at paragraph ten:

"This Agreement is contingent upon the following: (a) Seller obtaining a lot split whereby the Property is split from Parcel A as shown on the attached survey. Seller shall proceed promptly to obtain such lot split. (b) Seller's obtaining a partial release from Seller's mortgagee releasing the Property from the lien of its mortgage."

Paragraph eight of the agreement provided that upon acceptance, the offer became the agreement for the purchase and sale of the property. Moreover, the agreement comprised all the terms and conditions agreed upon by the parties.

Chicago Title Insurance Company ("Chicago") thereafter forwarded a letter to Fonovic relating to Applied's agreement to furnish a Title Guaranty along with the sale of the property. Chicago advised that the Title Guaranty would be furnished after the title transfer unless the buyers instructed it to do otherwise. Moreover, Chicago informed Fonovic about an Owner's Title Insurance Policy which would provide broader protection than a Title Guaranty and would be modestly priced at less than $400. The final paragraph of the letter notified Fonovic that if "you elect to obtain the additional protection of an owner's policy, you may advise us by signing the enclosed letter and returning it to us." The "enclosed letter" read as follows:

"Gentlemen:

"I/We acknowledge receipt of your letter and booklet regarding Owner's Title Insurance which is available to me/us.

"After reviewing this material I/We elect the following:

NOT TO RECEIVE THIS ADDITIONAL COVERAGE AVAILABLE TO ME/US.

YES, PLEASE ISSUE AN OWNER'S TITLE INSURANCE POLICY AND CHARGE ME/US WITH THE ADDITIONAL COST.

Sign: _____
DARIO FONOVIC

Sign: _____
LUIGI GAROFALO"

Chicago sent two letters to appellant and Fonovic in June 1993. The first dealt with escrow and tax matters. The other regarded prerequisites for the obtaining of an Owner's Policy. Both letters were directed to Fonovic and "Luigi Garafalo."

Meanwhile, the city of Cleveland conducted a water status check for purposes of sale of the property. It listed "Applied Mfg. Realty, Inc. to Dario Fonovic" as the owner of the property in its report.

The Euclid Sun Journal reported in its June 24, 1993 edition that two new businesses were entering the community. The newspaper identified Ohio Machinery Repair, owned by Fonovic, as the business which was going to be located at 21500 St. Clair Avenue. Appellant was not listed in the article as purchasing the real estate at 21500 St. Clair Avenue, nor did the article mention his company, Hydraulic Valves, Inc.

Appellant requested in a June 30, 1993 letter that Chicago provide certain documents to him regarding the property. Specifically, he asked for copies of all of the documents provided to Fonovic thus far or in the future. Moreover, appellant sought the identities of parties who provided any information that was used or would be used in the preparation of the documents.

Chicago responded to this correspondence on July 6, 1993. One of the documents provided to appellant was an "INSTRUCTION REGARDING MANNER OF DEALING WITH THE WITHHOLDING OF TAX ON DISPOSITION OF UNITED STATES REAL PROPERTY INTERESTS." This document required the signature(s) of the buyers of the property as an acknowledgment. Appellant's name was typed next to Fonovic's in the document provided to appellant by Chicago; a different copy of the document in the case file does not list appellant as a buyer.

On July 13, 1993, Alan R. Daus & Associates, Inc. ("Daus") penned a letter to Chicago wherein it was disclosed that the conditions contained in paragraph ten

of the agreement were fulfilled. All that was required thereafter was the designation of a closing date.

Appellant forwarded a letter to Chicago on July 20, 1993. He stated therein:

"This is to inform you that this Company in cooperation with Alan R. Daus and Associates has knowingly and intentionally engaged in the production of false documents concerning the above captioned escrow.

"This Co. [sic] persistence not to correct said documents while insisting that I sign them even after my many attempts and warnings to do so has left me with no choice but to withdraw from this deal."

Appellant sent a similar letter to Daus on the same date.

Applied, through its counsel in a July 21, 1993 letter, notified appellant and Fonovic of the satisfaction of the conditions to closing which were set forth in the agreement. In accordance with the satisfaction and in anticipation of the closing, Applied deposited the original executed Deed and Easement documents with Chicago. Applied thus advised appellant that under paragraph five of the agreement, the closing shall be on a date mutually agreed to by the parties "not later than 15 days" following satisfaction. Applied, therefore, reminded appellant that the closing would either proceed in accordance with the terms of the agreement or Applied would pursue its legal remedies, including the retention of the $5,000 earnest money.

Daus also corresponded with appellant via the mail in a July 22, 1993 letter. Its letter stated in relevant part:

"In good faith you and your partner signed an offer on the property listed above which was accepted by the Seller [Applied] on May 26, 1993. On the same day we delivered it to Chicago Title and instructed them to copy both of you on all documents. * * * There has been no illegal behavior on our part nor have we engaged in the production of false documents.

"1. An error was made in the spelling of your name, which was corrected as soon as it was brought to our attention.

"2. For some reason you did not initially receive copies of Chicago Title's correspondence. Neither did we. This was corrected as soon as it was brought to our attention.

"3. We delivered copies of the warranty deed, the easement for the water line, and the easement for the access between the buildings to both you and Mr. Fonovic with both names shown as the buyers in a form that you have not objected to. The Seller has performed his [sic] part of the contract."

The agreement to purchase the property subsequently fell through. Applied eventually sold the property to Fonovic as the sole purchaser for $200,000.

## II

Appellant filed his *pro se* complaint in the trial court on May 12, 1994. The complaint outlined two claims for relief, the latter consisting of over twenty-one paragraphs.

Appellant set forth in Count II that he received a telephone call from Fonovic in June 1993 and learned about Fonovic's receipt of certain documents from Chicago. Fonovic brought the documents to appellant for appellant's signature. Appellant noticed four "inconsistencies" upon review of the documents: (1) correspondence addressed only to Fonovic; (2) misspelling of appellant's surname; (3) listing of Fonovic only in the "Buyers column"; and (4) title insurance policy was a "typed letter," not a standard format, and was deceitful as written.

According to appellant's complaint, appellant immediately spoke with Fonovic and a representative of Daus, Jack Berger, about the "inconsistencies." Appellant advised them that he would not sign any document until it was written correctly. Fonovic's and Berger's remarks and answers were allegedly "evasive, nonresponsive and orchestrated."

Chicago thereafter forwarded additional documents to appellant without correcting the initial documents. Therefore, Fonovic was still listed as the only buyer of the property. Moreover, appellant charged that a proper insurance policy was never issued to him pursuant to his request.

Appellant then addressed the Euclid Sun Journal article which was printed in June 1993. He asserted that when he asked Fonovic and Berger about why he was not mentioned in the article, both men responded, " 'I don't know, I did not write the article, I have nothing to do with it.' " Appellant conducted his own investigation and discovered that Loren Weiss, Applied's president, was the party responsible for supplying the information contained in the article.

On July 15, 1993, Fonovic and Berger requested that appellant sign a document which would have set the closing date. Appellant refused to sign it because, according to him, if he did, the sale would proceed without any corrections made on the improperly completed documents. Therefore, appellant withdrew from the agreement to purchase the property, advising the defendants of his decision.

The defendants next allegedly disregarded appellant's notice. Additionally, they "initiated an obvious cover up attempt of their deceitful and fraudulent acts by issuing a series of documents in which Plaintiff's name was always well put first."

Paragraphs seventeen and twenty-one of appellant's complaint provide some insight as to his claims for relief:

"17. Following the investigation, together with some of the discrepancies and contradictions in Defendant's [sic] remarks, the lack of cooperation from each Defendant, and that additional documents were written without Plaintiff's name in the buyers column, it became evident that there was a conspiracy to expel Plaintiff from the deal, to deprive Plaintiff of ownership and to defraud Plaintiff of his share of the purchase price money for the property.

" * * * *

"21. The Plaintiff has sustained damage as a direct and proximate result from Defendant's falsification, wrongful, deceitful and fraudulent acts, and defamation of the Plaintiff and his business."

As stated *supra*, all defendants filed dispositive motions in response to appellant's claims. Fonovic filed a Civ.R. 12(B)(6) motion on June 15, 1994. Chicago, on July 15, 1994, filed a motion for interpleader of funds, *i.e.*, the earnest money, along with a motion to dismiss appellant's complaint. Applied and Daus filed motions for summary judgment on August 1, 1994 and August 23, 1994, respectively. Appellant responded to the motions and filed his own motion for summary judgment on August 31, 1994.

The trial court granted Chicago's interpleader motion on July 21, 1994. The court then conducted hearings as to the dispositive motions. On September 29, 1994, the trial court granted Applied's motion for summary judgment on appellant's complaint and its counterclaim for damages resulting from the sale of property to Fonovic. Applied was thus awarded $10,000, the price differential between appellant's and Fonovic's agreement and Fonovic's final payment for the property. The trial court on the same date also denied appellant's motion for summary judgment, granted Daus' motion for summary judgment, and granted Fonovic's and Chicago's motions to dismiss.

Appellant assigns error as follows:

"1. The Trail [sic] Court improperly granted Chicago Title's Motion to Dismiss. Chicago Title has failed to timely answer, respond or defend the claims of affirmative relief asserted by Garofalo in the Complaint, Summary Judgment and other pleadings filed by him.

"2. The Trial Court has incorrectly granted to Defendant Dario Fonovic its [sic] Motion to Dismiss after failing to timely answer and defend Plaintiff's Affirmative claims and based on unknown grounds other than prejudice.

"3. The Trial Court has erred in granting Alan R. Daus and Assoc. Inc.'s Motion for Summary Judgment based on unknown grounds other than prejudice.

"4. The Trial Court has erred in granting Defendant Applied Mfg. Realty Inc.'s Motion for Summary Judgment based on unknown facts or grounds other than prejudice.

"a) The Trial court has erred in granting Applied's Motion for Summary Judgment on Garofalo's claims because Garofalo's claims are issues of material facts [sic], thereby, barring Motion for Summary Judgment.

"b) Trial Court has erred in granting Applied's Motion for Summary Judgment on its Counterclaim consisting of further defraudind [sic].

"5. The Trial Court has incorrectly denied Garofalo's well-documented and well supported Motion for Summary Judgment which none of the Defendants has timely or properly provided a defensive response to the asserted claims of genuine issues of material fact because they have none."

### III

Appellant challenges the trial court's grant of Chicago's and Fonovic's motion to dismiss in his first and second assignments of error. Both of these defendants asserted that appellant failed to state a claim for which relief could be granted pursuant to Civ.R. 12(B)(6).

A trial court must presume the truth of all factual allegations in the complaint and must make all reasonable inferences in favor of the nonmoving party when it rules on a Civ.R. 12(B)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Perez v. Cleveland* (1993), 66 Ohio St.3d 397, 613 N.E.2d 199; *Mitchell v. Lawson Milk Co.* (1989), 40 Ohio St.3d 190, 532 N.E.2d 753; *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114. In order for a trial court to grant such a motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recover. See *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063; *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. The court nonetheless need not assume the truth of conclusions which are not supported by factual allegations. *Mitchell.*

A reviewing court must independently review the complaint to determine if dismissal is appropriate when considering the propriety of a Civ.R. 12(B)(6) dismissal. Civ.R. 12(B)(6) rulings are after all based upon conclusions of law rather than findings of fact. See *State ex rel. Drake v. Athens Cty. Bd. of Elections* (1988), 39 Ohio St.3d 40, 528 N.E.2d 1253. A reviewing court, therefore, need not defer to a trial court's ruling in Civ.R. 12(B)(6) cases.

■ In the present case, a review of appellant's first claim for relief reveals that it does not assert any legal grounds for recovery. It is merely a recitation of alleged facts. As to Count II, the only legal grounds for recovery ascertainable by this court are fraud and defamation.

■ A complaint for fraud must include five elements: (1) a false representation; (2) knowledge by the person making the representation that it is false; (3) intent by the person making the representation to induce the other to rely on the representation; (4) rightful reliance by the other to his detriment; and (5) an injury as a result of the reliance. *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456.

■ Herein, appellant basically submits that the defendants participated in a scheme to "squeeze" him out of the real estate purchase by either failing to include his name in the proper documents or misspelling his name therein. Specifically, with regard to his claim against Fonovic, appellant asserts that Fonovic told him not to worry when questioned about the discrepancies in the documents. Fonovic moreover attempted to convince appellant to sign for the closing date without the correction of the documents. Finally, Fonovic attempted to obtain appellant's signature on a "Receipt" in October 1993 which would have released all of appellant's interest in the property. Fonovic supposedly acted in this manner in order to be the sole titled owner of the property.

However, appellant's Count II does not go further than stating the foregoing with regard to his claim for fraud. Appellant does not allege that Fonovic made any false statements with knowledge that the statements were false. He does not claim that Fonovic made the false statements in order to induce appellant into relying on the statements. Finally, appellant fails to assert that he relied on any statements made by Fonovic. In fact, appellant's complaint amply demonstrates that he did not rely on any of Fonovic's alleged misrepresentations because he refused to sign any documents. Accordingly, appellant failed to present a claim for fraud against Fonovic. *Friedland.*

■ As to Chicago, appellant's complaint sets forth that this defendant issued a title insurance policy which was deceitful of the basic facts. The "policy" was the letter written to Fonovic informing both appellant and Fonovic about Owner's Title Insurance. Appellant otherwise claimed without specificity that Chicago prepared documents which excluded him as a buyer. These facts fail to amount to a claim for fraud. *Id.*

■ Appellant also disputes, *inter alia,* the dismissal of his complaint against Fonovic and Chicago as to his claim for defamation. To establish a claim for defamation, a plaintiff must demonstrate the existence of a false publication causing injury to a person's reputation, or exposing him to public hatred,

contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. *Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118, 95 N.E. 735; *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 588 N.E.2d 280; *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 21 OBR 143, 486 N.E.2d 1220.

Appellant refers to the article printed in the Euclid Sun Journal as being defamatory. However, the article did not contain any information regarding either appellant or his business. The article advised the community only that Fonovic and his business were to be moving to the area. Under these circumstances, there can be no false publication with regard to appellant. He thus failed to set forth a claim for relief for defamation. *Cleveland Leader Printing Co.; Ashcroft.*

Appellant's claims for fraud and defamation against Fonovic and Chicago were not sufficiently set forth in his complaint to withstand a Civ.R. 12(B)(6) motion. *Perez; York.* The trial court thus did not err in dismissing the complaint as to these defendants pursuant to Civ.R. 12(B)(6). *State ex rel. Drake.*

Appellant's first and second assignments of error are overruled.

IV

Appellant's remaining assignments of error deal with the trial court's grant of summary judgment in favor of Applied and Daus. Appellant submits that he provided ample evidentiary support to the trial court which should have precluded such summary rulings. He furthermore suggests that the trial court erred in not entering summary judgment in favor of him on his complaint and Applied's counterclaim.

 The granting of summary judgment is only appropriate if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 428–429, 494 N.E.2d 1101, 1103–1104; Civ.R. 56(C). An order granting summary judgment will, therefore, only be upheld where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

 Summary judgment is a procedural device which is used to terminate litigation and, therefore, must be awarded with caution, with all doubts resolved in favor of the nonmoving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333,

587 N.E.2d 825, 831; see, also, *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140–141. However, it "forces the nonmoving party to produce evidence on any issue for which that party bears the production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099, citing *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

In the instant case, Daus attacked the basis for appellant's inclusion of it as a party defendant. Daus pointed out appellant's failure to even allege its involvement in the conspiracy with enough specificity to withstand the motion. Applied, on the other hand, identified appellant's three claims for relief, *i.e.*, fraud, misspelling of names, and defamation, and submitted that appellant could not produce sufficient evidence to withstand its motion for summary judgment.

Appellant sets forth an account whereby these defendants at all times intended to eliminate him as a buyer of the property. This elimination was purportedly to occur even in light of the executed agreement between appellant, Fonovic and Applied for the purchase of the property. Appellant charges that once the agreement was executed, the defendants either misspelled or omitted his name from all relevant documents thereafter with the intention of never listing him as a buyer of the property. Appellant's affidavit which he attaches to his brief in response to Applied's motion for summary judgment and his response to Daus's motion for summary judgment contain these factual allegations.

However, it must be remembered that the only claims for relief asserted by appellant in his complaint were for fraud and defamation. Appellant's factual assertions fail to amount to either of these claims for relief for the same reasons announced in our analysis of his first two assignments of error. Therefore, the trial court properly granted summary judgment in favor of Daus and Applied. *Johnson.*

Appellant also challenges the trial court's grant of summary judgment on Applied's counterclaim. Applied received an award in an amount to compensate it for the $10,000 it lost when Fonovic purchased the property for $200,000 following appellant's decision to not proceed with the purchase for $210,000. Appellant argues that the counterclaim was not properly before the trial court and the trial court's award was furthermore not supported by the evidence.

Civ.R. 13(A) governs the assertion of "compulsory" counterclaims. It states in part that a pleading shall contain a counterclaim when it arises out of the transaction that is the subject matter of the opposing party's claim. Applied's counterclaim certainly arose of the transaction which is the subject matter of appellant's claim since both regard the parties' intentions to purchase the

property. Appellant's assertion that Applied's counterclaim was not properly before the trial court is without merit.

Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach. See *Natl. City Bank v. Erskine & Sons* (1953), 158 Ohio St. 450, 49 O.O. 395, 110 N.E.2d 598; *Am. Sales, Inc. v. Boffo* (1991), 71 Ohio App.3d 168, 593 N.E.2d 316. Upon demonstration of breach of contract, damages should place the injured party in as good a position as it would have been absent the breach. See *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 1 O.O.3d 90, 351 N.E.2d 121; *Homes by Calkins, Inc. v. Fisher* (1993), 92 Ohio App.3d 262, 634 N.E.2d 1039.

As to appellant's argument herein regarding the award on Applied's counterclaim, there is no dispute that appellant executed the agreement to purchase the property. Appellant's assertion that he could withdraw from the agreement at virtually any time is without legal support since a party needs a "legal excuse" to not perform a properly executed contract. Appellant fails to demonstrate his "legal excuse" not to perform the contract because the record more than shows that the defendants performed their contractual obligations, including listing appellant as a grantee on the Warranty Deed which was executed on July 20, 1993. See *Erskine & Sons; Am. Sales, Inc.* The $10,000 awarded to Applied on its counterclaim moreover places it in a position it would have been in had appellant not breached the contract. *F. Enterprises, Inc.; Homes by Calkins, Inc.* The trial court's grant of summary judgment in favor of Applied on its counterclaim was, therefore, proper. *Johnson.*

Appellant's fifth assignment of error is overruled.

*Judgment affirmed.*

PATRICIA BLACKMON, P.J., and NAHRA, J., concur.