This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, SS Pallet Co. ("SS Pallet"), appeals the judgment of the Municipal Court of Akron dismissing SS Pallet's complaint against appellee, Delta Asphalt Co., Inc. ("Delta"). We affirm.
 I.
On June 16, 1999, SS Pallet entered into a contract with Delta, whereby Delta was to perform certain asphalt paving and concrete paving. The contract contained a "[o]ne year guarantee on all labor material."
SS Pallet filed a complaint against Delta on October 27, 1999, alleging that Delta breached the contract by installing two inches of asphalt, by failing to install a sufficient base and by failing to repair defective workmanship pursuant to the one year guarantee. After a bench trial, the trial court found that SS Pallet failed to prove its case by a preponderance of the evidence and dismissed SS Pallet's complaint. This appeal followed.
 II.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLEE DID NOT BREACH ITS WRITTEN CONTRACTUAL GUARANTEE OF THE WORK COVERED BY THE CONTRACT.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLEE MET HIS BURDEN OF WARNING APPELLANT OF THE POTENTIAL OF DAMAGE TO ASPHALT RELATED TO THE BASE.
SS Pallet's two assignments of error are related and will be discussed together. SS Pallet argues that Delta breached the contract by: 1) failing to repair the asphalt paving that collapsed a few weeks after the paving was completed and 2) failing to warn SS Pallet of the potential impact that water buildup from a nearby mound of top soil may have on the asphalt paving. SS Pallet asserts that the trial court erred in its determination that Delta did not breach the contract. We disagree.
We construe both of SS Pallet's assignments of error as challenging the manifest weight of the trial court's judgment. When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment.]
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
In order to succeed on a breach of contract claim one must show "the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." (Citations omitted.)Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95, 108.
The record reveals that SS Pallet and Delta entered a binding contract on June 6, 1999. The record further reflects that SS Pallet paid the contract price in full and Delta performed the asphalt paving and concrete paving. Shortly after the paving was completed, SS Pallet started experiencing problems with an area of the asphalt paving.
James Sills ("Sills") is the owner and sole shareholder of SS Pallet. Sills testified that he sought a contractor to pave an area of his property in order to accommodate an expansion of his business. SS Pallet is in the business of recycling wooden pallets. Sills uses 5,000 pound tow motors to transport the pallets around his property.
Sills stated that about three weeks after Delta performed the asphalt paving the wheels of one of his tow motors sunk approximately 6 to 8 inches into the asphalt. He reported the problem and Delta patched the collapsed section of the asphalt. A week after the repair, another section of the asphalt appeared to be sinking and was "spongy." Sills observed sections of the asphalt where water was pushing through cracks in the asphalt. Sills testified that Delta refused to repair the second collapse of the asphalt. He also stated that Delta failed to warn him about any potential problems that might arise as a result of not using the stone base.
On cross-examination Sills testified that he did not inform Delta that in 1996, he had experienced problems with a tow motor sinking into asphalt in another area of his property.
Stephen Most ("Most") testified for SS Pallet. Most testified that he had over 20 years experience in the paving industry. Most observed the present condition of the asphalt and determined that the sinking was caused by an unstable sub-base that had become saturated with water. A mound of top soil near the paved area prevented surface water run-off and created pools of standing water. Most recommended a drainage system to correct the problem. On cross-examination Most testified that neither the asphalt or Delta's labor appeared to be defective.
Delta presented two witness at trial, Ted Dean Fortsaris ("Fortsaris") and Christopher Hyde Moore ("Moore"). Moore stated that he was employed as a sales representative for Tallmadge Asphalt. Tallmadge Asphalt prepared several proposals for SS Pallet in May 1999. However, Tallmadge Asphalt was unable to complete the project within the time frame requested by Sills. Moore testified that his first proposal was too high and he prepared a second proposal that did not include a stone base. Sills informed Moore that he had work done the year before and he felt that the surface was hard enough to support the asphalt. Moore also testified that a large mound of top soil was located on the property. One of his proposals included the removal of the top soil.
Fortsaris is employed at Delta and negotiated Delta's contract with Sills. His initial proposal for the paving project included a three-inch stone base of approximately 500 tons of stone. The first proposal was too high. At Sills' request, Fortsaris adjusted his figures and removed the approximately 500 tons of stone for the base from his second proposal. Fortsaris testified that he asked Sills three times to include the proper stone base and each time Sills refused. He warned Sills that the asphalt may not hold without the proper sub-base.
Delta responded the same day that Sills reported the first sinking problem. After the second sinking problem, Fortsaris realized the cracking asphalt was caused by the lack of a sub-base combined with the standing water on the property. He offered to do the necessary site work to correct the situation if Sills agreed to pay for the materials. Sills refused to pay any further amount to Delta.
After a careful review of the record, we find that the trial court's judgment is not against the manifest weight of the evidence. To prevail on its breach of contract claim, SS Pallet had to show by a preponderance of the evidence that Delta failed to fulfill its contractual obligations. We find that SS Pallet failed to demonstrate that Delta breached the contract by failing to conduct repair work or by failing to warn about the danger of paving without a sub-base.
Under the contract, Delta guaranteed its labor and materials. SS Pallet did not present evidence that Delta's materials or labor were defective. SS Pallet's expert witness, Most stated that he "didn't see anything that would indicate that the asphalt was defective," and when asked upon looking at the work performed by Delta if there was anything defective about the way they did the job Most responded "[n]o." Delta is obligated under the contract to guarantee its materials and labor for one year and Delta did not breach this obligation.
The parties' accounts conflicted regarding whether Delta warned SS Pallet about the possible danger of paving asphalt without a proper sub-base. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Supported as it was by some evidence, and not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to violate substantial justice, the trial court's finding was not contrary to the manifest weight of the evidence.
SS Pallet's first and second assignments of error are overruled.
 III.
Having overruled both of SS Pallet's assignments of error we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Municipal Court of Akron, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
____________________________ WILLIAM G. BATCHELDER
WHITMORE, J. CONCUR.