OPINION
{¶ 1} Appellants, Keith E. and Laura Ripley, timely appeal the decision of the Columbiana County Court of Common Pleas to grant Appellees, Richard B. and Kelli McDevitt, a directed verdict in this matter.
 {¶ 2} The matter stems from a purchase of residential property. Appellants purchased the property, located in Salem, Ohio, from Appellees on July 14, 2003. Appellants were clearly aware of some problems with the roof at the time of purchase. However, they appear to have believed that these problems had been repaired. The roof leaked during a rainstorm seventeen days after Appellants moved into the house.
 {¶ 3} Appellants filed suit alleging claims for breach of contract, fraud, and actual malice. The case eventually proceeded to jury trial. At the conclusion of Appellants' evidence, Appellees sought a directed verdict, which was granted by the trial court.
 {¶ 4} For the following reasons, the trial court's decision is affirmed in full.
 {¶ 5} Appellants' sole assignment of error on appeal asserts:
 {¶ 6} "The trial court erred when it granted the McDevitt's motion for a directed verdict."
 {¶ 7} A trial court's decision granting a motion for directed verdict presents a question of law, which an appellate court reviews de novo. Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257, 741 N.E.2d 155.
 {¶ 8} The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4):
 {¶ 9} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 10} When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141.
 {¶ 11} The trial court in the instant cause concluded that Appellants' claims were barred by the doctrine of caveat emptor. It should be initially noted that Appellants take issue with the trial court's reliance on and reference to the credibility of the witnesses in making this decision. The trial court judge stated:
 {¶ 12} "THE COURT: Summary judgment is a little different though. I mean summary judgment —
 {¶ 13} "[Plaintiff's Atty.]: I understand. I understand you have evidence in front of you, the testimony.
 {¶ 14} "THE COURT: Yes, I'm dealing with credibility of witnesses here. That's an advantage I have here that I don't have [in ruling on a motion for summary judgment]." (Tr., pp. 273-274.)
 {¶ 15} However, because a motion for directed verdict tests the legal sufficiency of the evidence presented, a court may not consider the weight of the evidence or the credibility of witnesses. Cater v. Cleveland (1998), 83 Ohio St.3d 24, 33,697 N.E.2d 610, citing Strother v. Hutchinson (1981),67 Ohio St.2d 282, 423 N.E.2d 467. Thus, the trial court in the instant case appears to be in error when the court states that it may consider the credibility of the witnesses. Appellants' counsel did not object to this statement. A full review of the record, however, reveals that while the trial court's reference to the credibility of the witnesses was in error, it did not affect the legitimacy of the court's ultimate decision since the doctrine of caveat emptor was applicable, here.
 {¶ 16} In addition, whether the trial court erred in its determination, this Court reviews the trial court's decision to grant a directed verdict de novo, pursuant to Civ.R. 50(A)(4).
 {¶ 17} Appellants asserted three grounds for relief at trial. Appellants' first count contains a claim for breach of contract. In order to establish a breach of contract, they must establish, "the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." Garofalo v. Chicago Title Ins. Co.
(1995), 104 Ohio App.3d 95, 108, 661 N.E.2d 218.
 {¶ 18} Appellants also set forth claims based on fraud and a claim based on the actual malice of Appellees in their actions. In order to prove fraud, a plaintiff must establish, "(a) a representation or, where there is a duty to disclose, the concealment of a fact, (b) that is material to the transaction, (c) made falsely, with the knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent to mislead another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately cause by the reliance." Riggins v. Bechtold,
1st Dist. No. C-010541, 2002-Ohio-3291, ¶ 8, citing Williams v.Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859.
 {¶ 19} It is well-settled that the doctrine of caveat emptor applies to real estate transactions in Ohio. This doctrine limits claims raising allegations of fraud, misrepresentation, and breach of contract related to real estate transactions. Parahoov. Mancini (Apr. 14, 1998), 11th Dist. App. No. 97APE08-1071;Layman v. Binns (1988), 35 Ohio St.3d 176, 177, 519 N.E.2d 642.
 {¶ 20} Caveat emptor provides that a seller of residential real property only has an obligation to disclose defects known by the seller that could not be readily discoverable by a reasonable inspection on the part of the buyer. Id. The purchaser of the real estate has a duty to inspect the property and to inquire about the condition of the property. Id.
 {¶ 21} The Ohio Supreme Court has held,
 {¶ 22} "[t]he doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Layman,
supra, at syllabus.
 {¶ 23} The trial court in the instant cause relied on the doctrine of caveat emptor in dismissing Appellants' complaint and in directing a verdict in Appellees' favor. The court noted that Appellants had an unimpeded opportunity to inspect the premises and that there were red flags concerning the condition of the roof, but Appellants proceeded to close on the sale of the property nonetheless. Further, the trial court found no evidence of fraud or malice and dismissed their complaint in its entirety. (Tr., pp. 277-279.)
 {¶ 24} Appellants claimed at trial, and raise here, their allegations that the sellers lied on the requisite property disclosure form. Thus, they assert that Appellees acted fraudulently and with actual malice entitling Appellants to damages.
 {¶ 25} R.C. § 5302.30(D)(1) sets forth the requirements for a residential property disclosure form. The purpose of the form is to allow the, "transferor to disclose material matters relating to the physical condition of the property to be transferred, including, but not limited to, * * * the condition of the structure of the property, including the roof[.]"
 {¶ 26} Recent leaks and repairs to a roof are "material matters" concerning the roof. It is clear Appellees disclosed these matters. Appellants take issue with Appellees' statement on the form that the roof, "[d]oes not leak now." (Plaintiffs' Exh. B.) Specifically, Appellees stated on the disclosure form that they knew of no current leaks or other material problems with the roof. Appellees also disclosed on the form that, the, "[r]oof was worked on 10/2002 for 2 leaks. Chimney repoint and back chimney taken down to attic level and roof replaced where back chimney was. Does not leak now." (Plaintiffs' Exh. B.)
 {¶ 27} Appellants argue that since Appellees indicated that the roof did not leak, but Appellants experienced roof leaks approximately seventeen days after they moved in, Appellees acted fraudulently and with actual malice in making the representations on the disclosure form. Appellants also point to the fact that Appellees painted over an old stain caused by water damage prior to their home inspection in making their fraud and malice claims.
 {¶ 28} Our review of the record reflects, however, that Appellants presented no evidence to establish that Appellees acted with intent to mislead them. Appellees never testified at trial. Appellants rely heavily on Appellees' truthfulness, or lack thereof, on the disclosure form to establish their claims. Appellants admitted at trial, though, that they saw a hole in the roof during their first walk through of the property. Appellants were well aware of a hole in the roof even before making an offer on the home. Notwithstanding this readily observable defect, Appellants made an offer to purchase the property, which Appellees accepted. The sale was made contingent upon a home inspection. (Plaintiffs' Exh. A., p. 1.)
 {¶ 29} Appellants make much of the fact that the parties had a contract addendum to the purchase agreement, which required Appellees to, "have hole repaired in roof, and flashing finished around chimney." (Plaintiffs' Exh. A.) Appellants were subsequently advised that these repairs were completed, and Appellants testified at trial and counsel stressed at appellate argument that they were satisfied that these repairs were made. Thus, following the repairs, they closed on the sale of the house. (Tr., pp. 33, 58, 232.)
 {¶ 30} Appellants also had the property inspected. The home inspector hired by Appellants also did not testify at trial; however, his report was submitted. It provided: "Loose roof shingles are a leakage concern. Recommend resecure to reduce risk of leakage. Repair gap in shingles as viewed from the attic to reduce leakage. see photo[.]" (Plaintiffs' Exh. E, p. 1.) The home inspection report also advised Appellants to, "[m]onitor [roof] seasonally for loose shingles, wind damage and deterioration." (Plaintiffs' Exh. E Front, p. 3.) The report also noted that there was staining in the attic and family room, but it "measured dry." (Plaintiffs' Exh. E Front, p. 4.)
 {¶ 31} The home inspection report also advised Appellants that this was a "vintage home," which are known to have, "inherent defects because they were built without the benefit of standardized Building Codes. * * * Repairs or improvements which you would like to repair * * * or have been advised to do, should be quoted prior to purchase by qualified contractors for costs and methods of repair." (Plaintiffs' Exh. E Front, p. 16.)
 {¶ 32} Based on the foregoing, the trial court was correct in applying the doctrine of caveat emptor and dismissing Appellants' claims. The evidence reveals that Appellants were clearly aware of problems with the roof. First, the sellers themselves initially revealed prior problems. (Plaintiffs' Exh. B.) Next, Appellants testified that they saw a hole in the roof and water damage during their first walk through of the home. (Tr., pp. 34, 172.) Finally, Appellants' own home inspection report revealed problems with the roof and evidence of past leakage. (Plaintiffs' Exh. E, p. 1.) Based on the foregoing, any problems with the roof, including leaks, were abundantly clear to Appellants in this case prior to their purchase of the property.
 {¶ 33} Further, it is clear in this matter Appellants had unfettered access to inspect the home, and there is no evidence supporting claims that Appellees acted fraudulently. The fact that Appellees painted over one area of water damage prior to the inspector's arrival is of no consequence because Appellants had already seen the spot and inquired about it. In fact, the inspector warns Appellants in his report of past and possibly future damage to the roof. (Tr., p. 173.) Thus, the report actually works in Appellees' favor. In sum, Appellees put Appellants on notice of roof leakage, Appellants observed proof of roof leaks and holes and Appellants' inspector warned of roof damage. There is not one item of evidence in support of Appellants' version of the events. Accordingly, caveat emptor applies, precluding Appellants' claims for fraud and actual malice. Layman, supra, at 177, 519 N.E.2d 642.
 {¶ 34} As to Appellants' breach of contract claims, in addition to the above, it is clear from the record, and there is absolutely no conflicting evidence, that the repairs sought by the addendum to the purchase agreement were made by Appellees. The addendum simply sought to have certain specific repairs to specific damage made. All parties agree that repairs were made. Appellants submitted no evidence directly linking these repairs to the leaks experienced after they moved into the house. The addendum was not and cannot be construed as a general guarantee or warranty, rather, it was intended to correct a specific, observable defect and was complied with by Appellees.
 {¶ 35} In conclusion, Appellants failed to set forth sufficient evidence in support of their claims to survive Appellees' motion for a directed verdict. Civ.R. 50(A)(4). Thus, Appellants' assignment of error lacks merit, and the trial court's decision is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.