[Cite as *Dream Big Energy, L.L.C. v. Eclipse Resources-Ohio, L.L.C.*, 2024-Ohio-5953.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DREAM BIG ENERGY, LLC | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 24CA00011 |
| ECLIPSE RESOURCES-OHIO, LLC<br>ET AL., | |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Guernsey County Court of
Common Pleas, Case No. 18CV614

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 19, 2024

APPEARANCES:

For Plaintiff-Appellant

THOMAS D. WHITE
KATHERINE M. K. KIMBLE
Eques, Inc.
5989 County Road 77
Millersburg, Ohio 44654

For Defendants-Appellees

PAUL N. GARINGER, ESQ.
KRISTOPHER J. ARMSTRONG, ESQ.
41 South High Street, Suite 3300
Columbus, Ohio 43215

*Hoffman, P.J.*

**{¶1}** Plaintiff-appellant Dream Big Energy, LLC (hereinafter "Dream Big") appeals the summary judgment entered by the Guernsey County Common Pleas Court dismissing its complaint for breach of contract, fraud, and Ohio RICO violations against Defendant-appellee SWN Production Company, LLC (hereinafter "SWN").

STATEMENT OF THE FACTS AND CASE

**{¶2}** In 2008, Dream Big's predecessors in interest, Andrew and Emily Fadorsen, entered into an oil and gas lease with Eclipse Resources-Ohio, LLC (hereinafter "Eclipse"). A 2013 superseding amendment to the lease followed. In 2019, Eclipse changed its name to Montage Resources Corporation, which became SWN in 2020. All of Dream Big's claims in the instant action relate to actions taken by Eclipse.

**{¶3}** Three wells have been in production on Dream Big's property since 2015: Andy Yoder 1H, Andy Yoder 3H, and Andy Yoder 5H. SWN is required to report production for each well on a quarterly basis to the Ohio Department of Natural Resources (hereinafter "ODNR").

**{¶4}** Everything produced by the Yoder wells comes up through a flow line at each wellhead. The mixture includes oil, natural gas, natural gas liquids (hereinafter "NGLs"), water, and brine. Solids are removed by sand traps, and the remaining flowstream continues to the Gas Processing Unit. At the Gas Processing Unit, the flowstream is separated into three mixtures both for purposes of allocation of royalties to each well, as well as for regulatory reporting requirements to ODNR. The three mixtures reported to ODNR are brine, which is the water or brine flowing back out of the well; gas, which is a gaseous mixture including both natural gas and NGLs, and oil, a liquid hydrocarbon mixture including NGLs, natural gas, and the oil produced from the wells.

ODNR requires the volume of each of the three mixtures be reported at the nearest point from which it is removed from the ground.

{¶5} After the liquid mixture is reported as oil to ODNR, the natural gas and NGLs are removed from the mixture, and the stabilized condensate which remains is sold as oil.

{¶6} Oil royalty payments from SWN to Dream Big are governed by Section 6 of the lease amendment, which provides in pertinent part:

    i. <u>Oil Royalty</u>.  To pay to the Lessor twelve and one half percent (12.5%) royalty based upon the gross proceeds paid to Lessee from the sale of oil, including without limitation other liquid hydrocarbons or their constituents and products thereof recovered from the Leased Premises.

    ii. <u>Gas Royalty</u>.  To pay to the Lessor twelve and one half percent (12.5%) royalty based upon the gross proceeds paid to Lessee for the gas, including without limitation other gaseous hydrocarbons or their constituents and products thereof casinghead gas, and other gaseous substance, ["gas substances"} marketed and used off the Leased Premises, and produced from each well drilled, which removes or recovers gas from the Leased Premises.

    iii. <u>Gross Proceeds.</u>  It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of

Lessee (or an affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder, provided, however, if the revenue received by Lessee from a third party who is not an Affiliate of Lessee is adjusted for the costs of gathering, storing, transporting, separating, treating, dehydrating, compressing, processing or marketing, Lessee may calculate Lessor's royalty as a percentage of the revenue Lessee received. The term "Affiliate of Lessee" means any person or entity that controls Lessee or is controlled by Lessee, and the term "control" means, in the case of any entity, the ownership or control of more than forty (40%) of the voting equity of such entity.

**{¶7}** On October 30, 2018, Dream Big filed the instant action against various defendants alleging breach of contract, wrongful commingling, fraud, breach of fiduciary duty, and civil conspiracy. Dream Big filed a second amended complaint in 2020, which included a cause of action for wrongful commingling against Eclipse. Eclipse filed a Civ. R. 12(B)(6) motion to dismiss the cause of action on the basis wrongful commingling is not a tort recognized in Ohio. The trial court granted the motion to dismiss.

**{¶8}** After SWN became the lessee, royalty payments increased, and adjustments for expenses decreased. Dream Big filed its third amended complaint in 2023. The third amended complaint omitted the claim for wrongful commingling, and set forth three causes of action: breach of contract, fraud, and Ohio RICO violations. All the causes of action were based on actions taken by Eclipse. SWN moved for summary

judgment. The trial court granted the motion and dismissed the third amended complaint against SWN. It is from the April 19, 2024 judgment of the trial court Dream Big prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S CAUSE OF ACTION FOR WRONGFUL COMMINGLING.

II. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN APPELLEE'S FAVOR ON APPELLANT'S BREACH OF CONTRACT CLAIM.

III. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN APPELLEE'S FAVOR ON APPELLANT'S FRAUD CLAIM.

IV. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN APPELLEE'S FAVOR ON APPELLANT'S OHIO CORRUPT PRACTICES ACT (OCPA)/RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) CLAIM.

I.

**{¶9}** In the first assignment of error, Appellant argues the trial court erred in dismissing its cause of action for wrongful commingling from its second amended complaint. Dream Big did not reassert this claim in its third amended complaint.

**{¶10}** it is well established an amended pleading constitutes an abandonment of a previous similar pleading. *Hubbard v. Cleveland Metro. School Dist.,* 2013-Ohio-1028, ¶ 13 (8th Dist.), *citing Grimm v. Modest,* 135 Ohio St. 275 (1939), and *Wrinkle v. Trabert,*

174 Ohio St. 233 (1963) ("[t]he substitution of an amended petition for an earlier one ordinarily constitutes an abandonment of the earlier pleading and a reliance upon the amended one").  The earlier pleading becomes *functus officio*.[1]  *State ex rel. Talaba v. Moreland*, 132 Ohio St. 71, 75(1936).

**{¶11}**  We find by failing to assert its claim for wrongful commingling in the third amended complaint, Appellant has abandoned the claim.  The first assignment of error is overruled.

II.

**{¶12}**  In the second assignment of error, Dream Big argues the trial court erred in granting summary judgment in favor of SWN on its claim for breach of contract.

**{¶13}**  Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.  *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987).  As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

> Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary

---

[1] *Functus officio* is defined as "having fulfilled the function * * * or accomplished the purpose, and therefore of no further force or authority. Applied to an * * * instrument, * * * which has fulfilled the purpose of its creation, and is therefore of no further virtue or effect." *Hubbard, supra, citing Black's Law Dictionary* (5th Ed. 1979).

judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶14}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 1997-Ohio-259, *citing Dresher v. Burt*, 1996-Ohio-107.

**{¶15}** The elements of a breach of contract claim are summarized as follows: "[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.,* 104 Ohio App.3d 95, 108 (1995).

**{¶16}** Dream Big alleged Eclipse breached the lease agreement by (1) adjusting royalties for expenses which were not authorized by the lease, and (2) failing to pay royalties on all oil and gas sold, as demonstrated by a discrepancy between the amounts of products reported to ODNR and the amounts of products on which royalties were paid.

**{¶17}** We first address the trial court's summary judgment on Dream Big's claim for breach of contract regarding expenses deducted from royalty payments. The lease as quoted earlier in this opinion provides, "[I]f the revenue received by Lessee from a third party who is not an Affiliate of Lessee is adjusted for the costs of gathering, storing, transporting, separating, treating, dehydrating, compressing, processing or marketing, Lessee may calculate Lessor's royalty as a percentage of the revenue Lessee received."

**{¶18}** In support of its motion for summary judgment, SWN presented the affidavit of Bethany Wilson, a senior accounting manager for SWN. She averred she had reviewed documents and records maintained by SWN with respect to royalty payments from Eclipse to Dream Big from 2015-2020, and the documents reflect all deductions taken from royalty payments for oil were for gathering, storing, transporting, separating, treating, dehydrating, compressing, processing, or marketing the oil. In response, Dream Big presented evidence the deductions taken by Eclipse totaled more than three times the deductions taken by SWN. However, Dream Big presented no evidence the deductions taken by Eclipse were not authorized by the lease. The mere fact Eclipse deducted more expenses from royalty payments than SWN deducted from royalty payments is insufficient to rebut the Wilson affidavit, which averred a review of the Eclipse records demonstrated all deductions were for purposes authorized by the lease. We find the trial court did not

err in granting summary judgment on Dream Big's claim Eclipse breached the contract by deducting expenses from royalty payments.

{¶19} Dream Big also argues Eclipse breached the contract by underpaying Dream Big for royalties on oil and gas sold.  SWN supported its motion for summary judgment with the affidavit of Derrick Pottmeyer, a petroleum engineer who is the Production Superintendent for SWN.  As part of his duties, Pottmeyer oversees operations of the Yoder wells.  In his affidavit, Pottmeyer averred all of the hydrocarbons from the Yoder Wells come up through the flow line at each wellhead.  This mixture includes everything the well is producing, including all condensate, natural gas, NGLs, and water or brine.  This flow line enters sand traps, which knock solids out of the flowstream.  The flowstream continues to the gas processing unit, where it is separated into three mixtures which are used both for allocation purposes regarding the payment of royalties, and for reporting requirements to ODNR.  The water/brine mixture is reported to ODNR as "brine," the gas mixture which includes natural gas and NGLs is reported as "gas," and the liquid mixture including NGLs, natural gas, and condensate is reported as "oil."  Pottmeyer averred when the Yoder wells initially started producing, the well produced more NGL's and natural gas in the initially separated liquid mixture, and the difference between the "oil" mixture reported to ODNR and the condensate oil sold and reported on the royalty statements is a result of the natural gas and NGLs coming out of the liquid hydrocarbon mixture previously reported to ODNR as "oil."  He averred over time, the amount of NGLs and natural gas in the liquid hydrocarbon mixture decreases, resulting in the amount reported to ODNR including a higher volume of stabilized condensate, which resulted in the amounts reported as "oil" to ODNR being closer to the

amounts of "oil" sold, on which royalties are paid after SWN took over the lease from Eclipse.

**{¶20}** As to natural gas, in a supplemental affidavit `Pottmeyer averred the gas mixture reported to ODNR as "gas" includes both natural gas and NGLs, and is measured in Mcfs. After the gas mixture is processed further downstream, purity NGLs are removed, and sold as individual components, which results in a reduced volume of natural gas sold as compared to the amount reported to ODNR as "gas." When the NGLs are removed and sold, they are measured and reported on the royalty statements in gallons, while the natural gas sold is still measured in Mcfs. Because they are measured for purposes of sale in different units, the volume as reported on the royalty statements are not comparable to the volume reported to ODNR.

**{¶21}** In response to the summary judgment motion, Dream Big presented spreadsheets demonstrating the amounts reported by Eclipse to ODNR differ from the amounts on which royalties were paid. However, Dream Big did not present any evidence to contradict the Pottmeyer affidavits which explained the reason for the discrepancy in the amounts reported to ODNR and the amounts of oil and gas sold on which royalties are paid, and also explained why the amount of oil sold becomes closer to the amount reported to ODNR over the lifespan of the wells. Dream Big presented no evidence Eclipse failed to pay royalties on oil and gas sold in accordance with the lease. We find the trial court did not err in granting summary judgment on Dream Big's claim Eclipse breached the contract in the payment of royalties.

**{¶22}** In conclusion, we find the trial court did not err in granting summary judgment on Dream Big's claim for breach of contract. The second assignment of error is overruled.

III.

**{¶23}** In the third assignment of error, Dream Big argues the trial court erred in granting summary judgment for SWN on its claim for fraud.

**{¶24}** To prove fraud, a plaintiff must demonstrate the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and, (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998).

**{¶25}** Dream Big alleged Eclipse committed fraud by adjusting royalties for expenses not allowed by contract. A claim for fraud which duplicates a contract claim is not viable. *Pierre Investments, Inc. v. CLS Capital Group, Inc.*, 2022-Ohio-4311, ¶ 37(6th Dist.), *citing Dayton Children's Hosp. v. Garrett Day, LLC,* 2019-Ohio-4875, ¶ 105-111 (2nd Dist.).

**{¶26}** In the instant case, Dream Big's fraud claim is duplicative of its breach of contract claim and is therefore not viable. Further, as discussed above, Dream Big failed to present evidence to rebut SWN's evidence which established the expense adjustments taken by Eclipse were all allowed by the lease. We find the trial court did not err in granting summary judgment dismissing Dream Big's claim for fraud.

**{¶27}** The third assignment of error is overruled.

IV.

**{¶28}** In the fourth assignment of error, Dream Big argues the trial court erred in granting summary judgment dismissing its claim Eclipse violated Ohio's RICO statute.

**{¶29}** To plead a civil RICO claim under the OCPA, the plaintiff must show: (1) the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Elliot v. Durrani*, 12021-Ohio-3055, ¶ 63 (1st Dist.). Dream Big argues Eclipse's actions in adjusting royalties for expenses not allowed under the lease and failing to pay royalties on all oil and gas materials reported to ODNR constituted a violation of R.C. 2923.32(A)(2), which provides, "No person, through a pattern of corrupt activity or the collection of an unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property."

**{¶30}** Dream Big's RICO claim relies for its validity on its claims set forth in its breach of contract and fraud claims. As discussed earlier in this opinion, Dream Big did not submit evidence sufficient to overcome summary judgment on the question of whether Eclipse failed to pay royalties in accordance with the lease and improperly adjusted royalties for expenses in violation of the lease. We therefore find the trial court did not err in granting summary judgment on Dream Big's RICO claims.

**{¶31}**  The fourth assignment of error is overruled.

**{¶32}**  The judgment of the Guernsey County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Baldwin, J.  and

King, J. concur