[Cite as *Hillard v. Univ. of Cincinnati*, 2011-Ohio-1861.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES RANDOLPH HILLARD, M.D.

     Plaintiff

     v.

UNIVERSITY OF CINCINNATI

     Defendant
     Case No. 2008-07900

Judge Alan C. Travis

DECISION

{¶ 1} Plaintiff brought this action alleging breach of contract. The case was tried to the court on the issues of both of liability and damages.

{¶ 2} The contract at issue was executed in March 2007, by plaintiff and David Stern, M.D., Dean of the College of Medicine (COM) at defendant, University of Cincinnati (UC). At the time, plaintiff was a tenured professor in the Department of Psychiatry, Associate Dean for Clinical Affairs, and Chief Executive Officer (CEO) of UC Physicians. He had been employed by UC since 1984, and had served in leadership roles for COM for approximately 16 years. Dr. Stern became the Dean of COM in July 2005. It quickly became apparent that Dr. Stern was not satisfied with plaintiff's performance in his leadership roles at the university. In March 2006, Dr. Stern and plaintiff came to an agreement whereby plaintiff relinquished his then position as Chair of the Department of Psychiatry. On March 5, 2007, after lengthy negotiations, the two entered into the contract that is the subject of this case. The essential terms of the contract were that plaintiff was to be placed on paid leave until June 30, 2008, that he

was to step down from his position as CEO of UC Physicians in exchange for a lump-sum payment of $208,875 and, although he was to retain the title of Associate Dean of Clinical Affairs, that he was to receive no salary or have any further role in that position. Thus, at the end of the leave period, plaintiff was to relinquish the title of Associate Dean of Clinical Affairs and retain only his tenured faculty position.

**{¶ 3}** On March 24, 2007, plaintiff accepted an offer from Michigan State University (MSU) to serve as both Associate Provost for Human Health Affairs and tenured Professor of Psychiatry. His employment commenced on July 1, 2007, at an annual salary of $450,000. UC learned that plaintiff had accepted the MSU position by virtue of a press release issued by that institution shortly thereafter. In July 2007, UC ceased payment to plaintiff. Plaintiff did not formally resign from his position at UC until June 2008. He contends that UC committed a breach of contract in failing to continue his full-time, faculty salary and benefits through June 30, 2008, and seeks judgment in the amount of $325,725.

**{¶ 4}** The controversy in this case centers largely around paragraph two of the contract which provides: "You will be on full-time special leave from your faculty position through June 30, 2008, during which time you will receive your base salary and full benefits."

**{¶ 5}** Plaintiff contends that the language "special leave" is ambiguous and that the court must therefore consider extrinsic evidence to ascertain the intent of the parties. According to plaintiff, the extrinsic evidence establishes that the parties intended that plaintiff be paid his salary and benefits throughout his special leave regardless of whether he accepted other employment, and that it was never anticipated that plaintiff would return to UC after his leave expired. He further argues that the contract was drafted with the assistance of Kathleen Robbins, in-house counsel for COM, that it was she who chose the appropriate language for the contract, and that she and Dr. Stern had the authority to bind UC to the parties' agreement.

**{¶ 6}** In contrast, defendant argues that the contract is not ambiguous, that the language of the document clearly provides that plaintiff could return to his faculty position as of July 1, 2008, that Dr. Stern never intended for UC to continue paying plaintiff if he secured other employment, and that Dr. Stern did not have the authority to

bind UC to such an agreement even if he had been inclined to do so. Defendant further contends that plaintiff violated the university's rules against collateral employment when he failed to resign from UC after accepting MSU's offer.

**{¶ 7}** "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108.

**{¶ 8}** Upon review of the evidence and testimony presented, the court finds that the issue of ambiguity is moot inasmuch as plaintiff failed to demonstrate the most fundamental element of his claim: that a binding contract existed. Although plaintiff and Dr. Stern may have in good faith believed otherwise, R.C. 3361.03 makes clear that:

**{¶ 9}** "The board of trustees of the university of Cincinnati shall employ, fix the compensation of, and remove the president and such number of professors, teachers, and other employees, as may be deemed necessary. The board shall do all things necessary for the creation, proper maintenance, and successful and continuous operation of the university and may adopt and amend bylaws and rules for the conduct of the board and the government and conduct of the university. The board may accept donations of lands and moneys for the purposes of such university."

**{¶ 10}** Pursuant to the statute, the sole authority to approve employment contracts rests with the board of trustees. Dr. Stern's undisputed testimony was that he did not seek board approval for the contract he executed with plaintiff. (Transcript, Page 127.) It is well-settled that public officers cannot bind the state by acts beyond their authority. See *Drake v. Medical College of Ohio* (1997), 120 Ohio App.3d 493,495.

**{¶ 11}** Plaintiff argues that R.C. 3361.03 does not apply because the contract did not purport to hire or fire him, or to set his compensation. Further, plaintiff contends that the board could legitimately delegate authority to "contracting officers" and that COM counsel, Kathleen Robbins, held such a position. The court disagrees with both propositions.

**{¶ 12}** The contract removed plaintiff from two high-ranking administrative positions; it provided for payment of a fixed sum in exchange for plaintiff's stepping

down from his unexpired term as CEO of UC Physicians; it eliminated his salary as Associate Dean of Clinical Affairs; and it fixed his total salary to that earned only through his faculty appointment. The court finds that such terms bring the parties' agreement squarely within the terms of the statute. The court further finds that the evidence fails to establish that Robbins was a contracting officer with authority to act on behalf of the board.[1] To the contrary, Lynda Price, then Assistant Dean for Faculty and Administrative Affairs, who had been supervised by Robbins since 1990, identified Robbins as a "contract administrator." (Transcript, Page 47.) That term is defined as "the duly appointed representative of the University as a party to the [Collective Bargaining Agreement]." (Defendant's Exhibit O, Page 116.) The definition of "contracting officer" was not included in any of the exhibits admitted at trial. Other than plaintiff, who was of the opinion that Robbins was a contracting officer, there was no other testimony or evidence to support a finding that Robbins had that degree of authority. Accordingly, the court concludes that Dr. Stern and Robbins did not have the authority to bind UC to the contract which they executed with plaintiff.

{¶ 13} Although such determination defeats plaintiff's claim, he has also argued that because the contract was a grant of "special" leave, Dr. Stern had the authority to negotiate and execute such an agreement. It is undisputed that the only UC provision for paid leave of such nature is found in University Rule No. 30-31-02, titled "Time off from work: Policy for administrative leave." The rule states in pertinent part:

{¶ 14} "A. * * * the following *shall constitute the policy of the board* respecting administrative leave:

{¶ 15} "1. Administrative leave *may be granted by the board, on recommendation of the president*, for purposes of intellectual and professional enrichment promising to serve the best interests of the university.

{¶ 16} "2. * * * *[t]he unit head must forward all requests* for leave, with his or her recommendation, *to the appropriate vice president*.

{¶ 17} "B. Unclassified exempt personnel at the rank of assistant dean and above or its equivalent, *as determined by the president and vice presidents*, may apply for leave on the basis of the following minimum terms of service:

---

[1]Robbins did not testify at trial; the parties agreed that her testimony was protected by the attorney-client

{¶ 18} "1.   After twelve quarters of full-time service, a leave of one quarter at full salary or two consecutive quarters at one-half salary.

{¶ 19} "2.   After eighteen quarters of full-time service, a leave of three consecutive quarters at one-half salary or two consecutive quarters at three-fourths salary.

{¶ 20} "3.   After twenty-four quarters of full-time service, a leave of two consecutive quarters at full salary or three consecutive quarters at two-thirds salary.

{¶ 21} "4.   In determining eligibility for administrative leave only three quarters of full-time service in any one year may be counted. ****.

{¶ 22} "5.   A person granted administrative leave *shall not, except by special permission of the board on recommendation of the president*, accept remuneration during the period of leave other than that paid him or her by the university and any prizes or academic awards that may be given him or her.

{¶ 23} "6.   A person on administrative leave shall receive any salary increase or promotion which he or she would have received had he or she remained in residence.

{¶ 24} "7.   Except in cases where university regulations require an earlier retirement, all administrative leave shall be granted with the understanding that the recipient is obligated to return to the university for at least one academic year immediately following the period of leave.

{¶ 25} " C*.   For a special purpose, leave may be granted without regard to the eligibility of the applicant for administrative leave. Since such leave is "special," each case shall be handled on its individual merits.*"  (Emphasis added.)  (Plaintiff's Exhibit 2.)

{¶ 26} There is no dispute that Dr. Stern and Robbins specifically chose the section C language "special" leave because it was the only provision that suited their purposes, i.e., to allow plaintiff to search for other employment while receiving pay.  As stated previously, there is no dispute that Dr. Stern did not seek the board's approval for the contract; it is further undisputed that he also did not seek a recommendation from UC's president.

{¶ 27} Plaintiff contends that section C is a "stand alone" provision, that it need not be read in conjunction with sections A and B, and that its language allowed Dr.

_____

privilege.

Stern to grant leave for any purpose, for any length of time, without regard to the eligibility of the applicant, and without obtaining the approval of the president or the board of trustees.

**{¶ 28}** Defendant argues that the rule must be read as a whole, that it is titled "administrative leave" and, thus, that special leave is simply one type of administrative leave that the board of trustees may grant even where the applicant does not meet the eligibility requirements set forth in section B (1) - (4) of the rule. Defendant noted that the rule does not define the terms "administrative leave," "leave," or "special purpose," and that it uses the terms "administrative leave" and "leave" interchangeably.

**{¶ 29}** Based upon the evidence and testimony presented, the court finds that the only reasonable interpretation of the special leave provision is that asserted by defendant. The court concludes that special leave was one form of the university's administrative leave, and that any leave granted under that rule was subject to board approval. Consequently, despite the parties' good faith efforts to craft a binding contract, they failed to do so. As a result, plaintiff's claim must fail.

**{¶ 30}** Moreover, even assuming that the parties had been successful in their efforts, the court is persuaded that the provisions of section B (5), above, and the university's collateral employment rule would have applied during plaintiff's leave period. Section B (5) prohibits a person on administrative leave from accepting remuneration from sources other than the university without first obtaining a recommendation of the president and permission of the board. Similarly, University Rule No. 30-21-02[2]

---

[2]Rule No. 30-21-02, titled "Employment: Policy on collateral employment for faculty members and librarians", provides in pertinent part:

"A. * * * Faculty members and librarians may engage in collateral employment consisting of institutional and/or non-institutional effort, including work of a consulting nature, *provided information regarding such employment is made known in advance to the dean of the college or division concerned* or the appropriate library administrator or vice president *and provided said dean or library administrator or vice president approves such collateral employment and agrees that the collateral employment:*

"1. Does not interfere with nor is inconsistent with the performance of the individual's university duties;

"2. Does not raise questions of conflict of interest in connection with other interests or work with which the individual, or the university, is involved.

"* * *

"C. 'Non-institutional effort' is the service faculty members * * * provide outside the university during the normal work week for which they receive non-university compensation. Non-institutional effort that meets the criteria specified in paragraphs (A)(1) and (A)(2) of this rule will normally be permitted by the university for full-time faculty * * * to the extent that such activities do not exceed an average of one

prohibits faculty members from engaging in collateral employment unless such employment is made known to the faculty member's dean or vice president and is approved by the same.

{¶ 31} Provided that plaintiff was on an authorized administrative leave, that leave would have been subject to all of the rules and policies applicable to UC employees. Whether on leave or otherwise, all UC employees are forbidden to pursue outside employment without first securing approval from the proper UC officials. Thus, once plaintiff a began receiving a salary from MSU without the permission of Dr. Stern or the board, he violated the terms of both the leave policy and the parties' purported contract. Plaintiff's beach of contract claim must also fail for this reason.

{¶ 32} For the foregoing reasons, the court finds that plaintiff failed to prove his claim of breach of contract and, accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES RANDOLPH HILLARD, M.D.

    Plaintiff

    v.

UNIVERSITY OF CINCINNATI

    Defendant
    Case No. 2008-07900

---

day of the normal work week. *Exceptions to this limitation may be made upon approval of the dean and the vice president.* (Emphasis added.) (Defendant's Exhibit N.)

Judge Alan C. Travis

JUDGMENT ENTRY

This case was tried to the court on the issues of liability and damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

cc:

Amy S. Brown                          George M. Reul Jr.
Randall W. Knutti                     525 Vine Street, Sixth Floor
Assistant Attorneys General           Cincinnati, Ohio 45202
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

LH/cmd
Filed April 4, 2011
To S.C. reporter April 12, 2011