[Cite as *Kardux v. Univ. of Cincinnati*, 2012-Ohio-3996.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SEAN KARDUX

    Plaintiff

    v.

UNIVERSITY OF CINCINNATI

    Defendant

Case No. 2011-08253

Judge Joseph T. Clark

ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

{¶ 1} On March 1, 2012, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On March 7, 2012, plaintiff filed a motion to compel discovery. On March 8, 2012, defendant filed a response to plaintiff's motion to compel, and on March 14, 2012, plaintiff filed a response to defendant's motion for summary judgment. Defendant filed a reply on March 20, 2012.[1] The motions are now before the court for a non-oral hearing pursuant to L.C.C.R. 4.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable

---

[1]Defendant's March 20, 2012 motion for leave to file a reply is GRANTED instanter.

minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

**{¶ 4}** In 2007, plaintiff enrolled at the University of Cincinnati (UC) to study organizational leadership. While at UC, plaintiff obtained part-time employment as an administrative assistant with the student newspaper, *The News Record*. Shortly thereafter, plaintiff was promoted to the position of assistant business manager, and eventually to business manager. Plaintiff's duties included assisting the newspaper's advertising representatives in establishing territories and developing plans to reach out to potential advertisers. Plaintiff reported directly to Len Penix, director of the Department of Student Media.

**{¶ 5}** Sometime in the beginning of 2010, plaintiff became aware of the creation of a new full-time business management position at the newspaper. Plaintiff explained that the newspaper had been historically run by student workers, with the exception of Penix, rather than permanent full-time staff. Plaintiff stated that when students running the business side of the paper would move on every few years, they would take valuable institutional knowledge with them and that the full-time position was designed to give the newspaper a more stable business model.

**{¶ 6}** Plaintiff subsequently applied for the position of assistant academic director and was interviewed by Penix. According to plaintiff, the position was an academic position that did not require any work be performed during the summer months; however, the salary was disbursed over a 12-month period. During this time period, plaintiff also interviewed with CMDS construction company for a position as an assistant project manager. Plaintiff received offers of employment from UC on May 21, 2010 and

CMDS during that same week.[2]  The base salary at the newspaper was $23,660, while CMDS offered to pay plaintiff a $45,000 salary.

{¶ 7} Plaintiff informed Penix that he had an offer from CMDS and that the assistant academic director's $23,660 salary was insufficient.  According to plaintiff, Penix asked if plaintiff would be interested in the position "if there's a possibility that [UC] could match what this construction company was offering * * *."  (Plaintiff's Deposition, p. 31.)  Plaintiff indicated that he would be interested "if [UC] came very close to [CMDS's salary] * * *." *Id.*

{¶ 8} In late May, Penix had several conversations about plaintiff's salary with Mike Sonntag, a member of the planning committee which oversees the newspaper. Plaintiff states that he was in Penix's office when Penix discussed the issue with Sonntag over the telephone.

{¶ 9} Nevertheless, plaintiff stated that the new offer of employment was for an additional $15,000 contingent upon successfully meeting various goals set by Penix. Performance reviews would occur every 90 days to determine whether plaintiff had successfully accomplished the goals.  If plaintiff had performed successfully, plaintiff would receive a $5,000 raise and a new set of goals for the next 90 days.  This process was to repeat itself until plaintiff completed three reviews over the first 270 days of his employment.  Plaintiff's first set of goals included increasing revenue and profit, reducing expenses, streamlining processes, and building new teaming ventures with other departments.  Plaintiff began working as the assistant academic director at the newspaper on June 1, 2010.

{¶ 10} On September 15, 2010, Penix sent Sonntag a letter requesting a $5,000 salary increase for plaintiff.   In the letter, Penix listed plaintiff's numerous accomplishments over the summer months and noted that plaintiff had "surpassed all goals and objectives set for him at a meeting held upon his hiring on June 1, 2010."[3]

---

[2]See Exhibit A-1 to defendant's motion for summary judgment.
[3]See Exhibit A-2 to defendant's motion for summary judgment.

According to plaintiff, in late September 2010, Penix was told that he lacked authority to offer plaintiff a $15,000 increase in salary and that no such increase would be forthcoming. Plaintiff subsequently resigned his employment at UC and began working for LexisNexis in December 2007. Plaintiff alleges breach of contract, promissory estoppel, and unjust enrichment.

{¶ 11} As an initial matter, plaintiff seeks an order compelling defendant to answer plaintiff's second set of interrogatories and request for production of documents. In its response to the motion, defendant attached supplemental discovery including documents responsive to each request and answers to all but two interrogatories.[4] Defendant objected to an interrogatory asking it to "state the name of each person who was a contracting authority for the University of Cincinnati after 11/17/2009 setting forth for each such person if that person's contracting authority was increased or remained unchanged." Defendant has objected to the request stating that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

{¶ 12} The court notes that in defendant's answer to plaintiff's first set of interrogatories, defendant denied that Sonntag is a contracting authority for UC. Additionally, defendant provided plaintiff with a "list of all delegates authorized to approve and execute contracts under 3361:10-1-06(E)(1) [and (2)] of the U.C. Board of Trustees bylaws: execution of instruments rules."

{¶ 13} Civ.R. 26(B)(1) provides, in part, "Parties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending

---

[4]Defendant partially answered interrogatory 2 of plaintiff's second set of interrogatories, which states "Please identify by name, current address, telephone number and current employment status with the University of Cincinnati each and every individual whom had authority to contract on behalf of the University of Cincinnati for employment purposes, including but not limited to salary, performance based pay increases, beginning April 1, 2010 through October 31, 2010." Although defendant objected that such a question was overly broad, it provided plaintiff with a list of individuals responsive to such a question.

action * * *.  It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."  The court finds that plaintiff's discovery requests are overly broad and not reasonably calculated to lead to the discovery of admissible evidence inasmuch at they encompass the entire university system.  Accordingly, defendant's objections are SUSTAINED and plaintiff's motion to compel is DENIED.

{¶ 14} "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108 (1995).

{¶ 15} UC argues that Penix and Sonntag had no authority to bind UC and that any agreement for an additional $15,000 between plaintiff and Penix is unenforceable. As noted above, defendant has submitted its answer's to plaintiff's first set of interrogatories and request for production of documents wherein it denies that Sonntag is a contracting authority for UC.  Additionally, UC relies upon R.C. 3361.03 which provides: "The board of trustees of the university of Cincinnati shall employ, fix the compensation of, and remove the president and such number of professors, teachers, and other employees, as may be deemed necessary.  The board shall do all things necessary for the creation, proper maintenance, and successful and continuous operation of the university and may adopt and amend bylaws and rules for the conduct of the board and the government and conduct of the university.  The board may accept donations of lands and moneys for the purposes of such university."

{¶ 16} Plaintiff relies upon UC's Communications Board's constitution and bylaws and the minutes of a November 17, 2009 meeting of the Board of Trustees for the proposition that Sonntag had been delegated contracting authority.[5]

---

[5]The court notes that plaintiff's exhibits attached to its memorandum contra are not authenticated; however, defendant has not objected to the exhibits.

{¶ 17} Section III entitled "Duties of the Communications Board" provides, in part, that "The Communications Board, working with the English Department and the Director of Journalism, has authority to recruit, hire, and supervise, evaluate and retain the professional Director of Student Media consistent with University rules and regulations and in consultations with the Senior Vice President and Provost, West Campus."[6] However, it is not disputed that plaintiff's position was the assistant academic director, not the Director of Student Media.

{¶ 18} The minutes of the November 17, 2009, Board of Trustee's meeting under the heading of Finance and Administration Committee indicates that the Board approved an amendment to the university rules "establishing limitations on the delegation of contracting authority, terminating prior delegations of contracting authority and increasing the signature authority dollar limits of the President and Contracting Officer."[7]

{¶ 19} It is not disputed that plaintiff began work on June 1, 2010 and that plaintiff received biweekly compensation; however, plaintiff produced no written employment agreement, no evidence that the Board approved an employment agreement relating to plaintiff, and no evidence that either Penix or Sonntag had contracting authority on behalf of defendant. Although plaintiff, Penix, and Sonntag may have, in good faith, believed otherwise, R.C. 3361.03 makes it clear that only the Board and its designees have such authority.

{¶ 20} It is well-settled that public officers cannot bind the state by acts beyond their authority. *See Drake v. Medical College of Ohio*, 120 Ohio App.3d 493, 495 (1997); *Hillard v. Univ. of Cincinnati*, Ct. of Cl. No. 2008-07900, 2011-Ohio-1861. Likewise, promissory estoppel cannot be applied to contravene statutory authority. *Id.*

---

[6]See Plaintiff's Exhibit 9.
[7]See Plaintiff's Exhibit 6.

Accordingly, the court finds that plaintiff has failed to establish his claims of breach of contract and promissory estoppel.

{¶ 21} Regarding plaintiff's claim of unjust enrichment, plaintiff must establish that a benefit has been conferred by plaintiff upon defendant; that defendant had knowledge of the benefit; and that defendant retained the benefit under circumstances where it would be unjust to do so. *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938); *DVCC, Inc. v. Medical College*, 10th Dist. No. 05AP-237, 2006-Ohio-945, ¶26. Plaintiff claims that even though UC employees typically do not work during the summer, he did so on a voluntary basis. Plaintiff admits, however, that he was in fact paid by UC during the summer months. Accordingly, plaintiff's claim of unjust enrichment must fail.

{¶ 22} For the foregoing reasons, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All future events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Emily M. Simmons
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Neal W. Duiker
226 Reading Road
Mason, Ohio 45040

003
Filed May 8, 2012
To S.C. Reporter August 31, 2012