[Cite as *McDonald v. Canton Med. Edn. Found., Inc.*, 2013-Ohio-3659.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PAUL MC DONALD, M.D. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2012CA00240 |
| | : | |
| CANTON MEDICAL EDUCATION | : | |
| FOUNDATION, INC. | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                  Common Pleas, 2012CV00513



JUDGMENT:                         AFFIRMED



DATE OF JUDGMENT ENTRY:           August 12, 2013



APPEARANCES:

For Plaintiff-Appellant:                    For Defendant-Appellee:

STEPHEN P. GRIFFIN                          RICHARD S. MILLIGAN
MICHAEL J. KAHLENBERG                       PAUL J. PUSATERI
825 S. Main Street                          AMANDA L. WALLS
North Canton, OH 44720                      4684 Douglas Circle NW
                                            P.O. Box 35459
                                            Canton, OH 44735-5459

*Delaney, J.*

{¶1}   Plaintiff-Appellant Paul McDonald, M.D. appeals the December 10, 2012 judgment entry of the Stark County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Canton Medical Education Foundation, Inc.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellant Paul McDonald, M.D. graduated from Chicago Medical School in 1998.   Dr. McDonald completed one year of residency at the Martin Luther King Medical Center in Los Angeles in 2000.   Not satisfied with the residency program at Martin Luther King Medical Center, Dr. McDonald transferred to the internal medicine residency program provided by Defendant-Appellee Canton Medical Education Foundation, Inc. ("CMEF").

{¶3}   On March 26, 2001, Dr. McDonald entered the CMEF residency program for his second post-graduate year ("PGY2").  A doctor entering the residency program at CMEF does so under contract for each year the doctor attends the program.   The contract is entitled the "Canton Medical Education Foundation Resident Agreement." For Dr. McDonald's PGY2, the contract term was from July 1, 2001 to June 30, 2002. The resident's general responsibilities under the contract are outlined in the Resident Physician Manual, attached as Exhibit A to the contract and incorporated by reference. During the contract period, the resident conducts clinical rotations under the supervision of the program.

{¶4}   On February 27, 2002, Dr. McDonald entered into a Resident Agreement with CMEF for Dr. McDonald's third post-graduate year ("PGY3").   The term of the contract was from July 1, 2002 to July 1, 2003.   The contract stated Dr. McDonald

received an annual stipend in the amount of $42,129.00. Dr. McDonald's duties under the contract again included clinical rotations. The contract incorporated the Resident Physician Manual by reference. Pertinent to this appeal, the Resident Physician Manual states as follows:

PROMOTION AND REAPPOINTMENT

Residents are promoted on the basis of acceptable periodic clinical evaluations, which may be supplemented by other evaluation methods.

In most instances, contractual appointment is equated with academic promotion. Under some circumstances, a resident may be reappointed to repeat an academic year.

The decision to reappoint at the same level or promote a resident to the next level of post-graduate training shall be done annually. The decision will be made after review of the resident's performance.

The following factors are used in the decision to promote:

1. All evaluations of the resident's performance

2. Pass the USMLE [United States Medical Licensing Exam] II to be promoted to a PGY-2 (excluding Transitional)

3. Pass the USMLE III to complete the residency program

4. Any other criteria deemed appropriate by the Program Director

The Program Director will communicate reappointment and promotional decisions to the GMERC [Graduate Medical Education and Research Committee]. All appointments (same and next academic year) are restricted to a maximum period of 12 months with no implied promise of extension. Each resident is required to sign a contract, signifying acceptance of the appointment.

If significant deficiencies in the resident's performance are identified, a decision may be made not to promote. As much advance written notice as possible will be given to this resident. When remediation is decided upon rather than promotion, the resident's Residency Program Director, when appropriate, will arrange a plan, which includes monitoring performance. The Program Director may choose to extend the existing contract for the length of time necessary to complete the remediation

process. The resident may use the grievance procedure to appeal the decision not to promote.

{¶5} On January 14, 2003, during the term of Dr. McDonald's PGY3 contract with CMEF, Dr. McDonald entered into another Resident Agreement with CMEF that extended the term of the PGY3 contract by six months. The contract term was from July 1, 2003 to December 31, 2003. The annual stipend was $42,972.00.

{¶6} The resident generally takes the USMLE III exam during the third post-graduate year. Upon passage of the USMLE III exam and a certificate of completion of a residency program, a doctor is eligible to sit for the internal medicine boards. If the doctor passes the internal medicine boards, the doctor will be an internal medicine board certified physician.

{¶7} Dr. McDonald took the USMLE III exam on November 25, 2003. He did not pass the exam.

{¶8} The term of Dr. McDonald's Resident Agreement was to expire on December 31, 2003. Dr. McDonald met with Dr. Richard Ziegler, Program Director of the CMEF residency program to discuss Dr. McDonald's status with the residency program. Pursuant to their discussion, Dr. Zeigler sent Dr. McDonald the following letter on December 30, 2003:

Re: Certificate of Completion of Training, Internal Medicine Residency

Program

Thank you very much for meeting with me today, 12/30/2003, to discuss your status with the residency program. I am sorry that the news from USMLE Step 3 [USMLE III] was not favorable. The faculty and staff of the residency program are pulling for you as you work and study to get by this next hurdle.

> As we discussed at the meeting, the residency steering committee/program evaluation committee has decided that you will receive a certificate of completion of training in internal medicine from the residency when you pass Step 3. The committee also decided that you have one year (until 12/31/04) to pass Step 3. If you do not pass Step 3 by 12/31/04, the residency program will not be able to grant you a certificate of completion of training and you will probably have to repeat at least a part of your residency training program. As you know, a passing grade on Step 3 is a requirement for completion of all Canton residency programs.

{¶9} After December 31, 2003, Dr. McDonald was no longer performing duties, including clinical rotations, as outlined by the Resident Agreement.

{¶10} Dr. McDonald took the USMLE III exam on June 3, 2004. He did not pass the exam.

{¶11} Dr. John McGreevey, Jr., the current Program Director of the CMEF Residency Program sent the following letter to Dr. McDonald on June 29, 2004:

> I hope this letter finds you well and enjoying the summer. I am writing as a reminder for you to inform us once you have passed your USMLE Step III exam so that we can release your diploma and plaque. Per the Steering Committee decision, if you do not pass USMLE Step III by December 31, 2004, we will be unable to grant you a certificate of completion of training and you will likely need to repeat at least a portion of your residency training.

{¶12} On November 24, 2004, Dr. McGreevey sent Dr. McDonald the following letter:

> As we discussed last week, I am allowing you to extend the deadline for taking your Step 3 exam into January 2005 because of the current scheduling problems. However, this does not in anyway change any of the other aspects of the letters you have received from the program regarding Step 3.

> Please let me know as soon as possible the results of your Step 3 exam.

{¶13} Dr. McDonald took the USMLE III exam on January 20, 2005. He did not pass the exam.

{¶14} On August 26, 2005, Dr. McGreevey sent Dr. McDonald a certified letter

which read:

> It has been 20 months since you have completed your final residency rotation here in CMEF. During this time we have not sent in a report to the American Board of Internal Medicine on your PGY-3 year, because you had not passed Step 3 of the USMLE, a requirement for successful completion. In December 2003 the program informed you that we would only be able to provide you with a certificate of completion if you were able to pass Step 3 of the USMLE by December 31, 2004. You were also told at that time that if you did not pass Step 3 by that time, you would have to repeat some portion of your training. We later agreed to extend this deadline into January 2005 at your request. It has been over six months since the deadline has passed and to our knowledge you still have not passed Step 3. Added to that, we are concerned because during this time you have been unable to engage in activities to maintain your clinical skills.
>
> We are required to report to the American Board of Internal Medicine a satisfactory or unsatisfactory rating for your PGY-3 year. An unsatisfactory rating mandates repeating of the third year of residency.
>
> At this time we have decided to turn in an unsatisfactory rating to the ABIM on the basis of your inability to pass Step 3 of the USMLE. This means that you will not be eligible to receive a certificate of completion, or to take the Internal Medicine Boards, unless you repeat your third year of residency. We are not able to guarantee the availability of a position here to do another PGY-3 year.
>
> We will verify the time of training that you have had here and the circumstances of why you have not received a certificate to anyone upon your request. However, since you have not completed the requirements of residency 20 months after finishing your final rotation, we feel this is the appropriate course.

{¶15} Dr. McDonald took the USMLE III exam on October 18, 2005. He passed

the exam.

{¶16} Dr. McDonald sent CMEF a letter on December 7, 2005 requesting the

Steering Committee to reverse its decision to give an unsatisfactory rating for Dr.

McDonald to the ABIM. Dr. McDonald argued he had successfully completed his PGY3 year and passed the USMLE III exam.

{¶17} On February 24, 2006, CMEF informed Dr. McDonald that CMEF would not give Dr. McDonald credit for the PGY3 training at CMEF.

{¶18} Dr. McDonald filed a complaint against CMEF with the Stark County Court of Common Pleas. In his complaint, he alleged breach of written contract, breach of oral contract, and promissory estoppel. He argued CMEF breached the Resident Agreement by failing to award Dr. McDonald a certificate of completion and giving him an unsatisfactory rating even though Dr. McDonald completed his PGY3 and passed the USMLE III. Dr. McDonald argued the unsatisfactory rating damaged his abilities to gain entrance into a residency program to retake his third post-graduate year. Dr. McDonald is not able to sit for the Internal Medicine Boards to become a board certified physician in internal medicine. He argued he suffered financial damages by his inability to practice as a board certified physician.

{¶19} On October 29, 2012, CMEF moved for summary judgment on all counts of the complaint. Dr. McDonald responded on November 8, 2012. Dr. McDonald dismissed his claims for breach of oral contract and promissory estoppel on November 13, 2012. CMEF replied on November 20, 2012.

{¶20} The trial court granted summary judgment in favor of CMEF on December 10, 2012. It is from this decision Dr. McDonald now appeals.

**ASSIGNMENT OF ERROR**

{¶21} Dr. McDonald raises one Assignment of Error:

{¶22} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE WHERE THERE WERE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE."

**ANALYSIS**

{¶23} Dr. McDonald argues the trial court erred in granting summary judgment in favor of CMEF. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶24} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element

of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶25} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶26} In order to prove a claim for breach of contract by CMEF, Dr. McDonald must show: 1) the existence of a contract; 2) performance by the plaintiff; 3) nonperformance by the defendant; and 4) damages as a result. *Textron Fin. Corp. v. Nationwide Mutual Insurance Co.,* 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Insurance Co.,* 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995). A plaintiff must prove the elements of a breach of contract by a preponderance of the evidence. *Cooper & Pachell v. Haslage,* 142 Ohio App.3d 704, 707, 756 N.E.2d 1248 (9th Dist.2001).

{¶27} Dr. McDonald argues CMEF breached the Resident Agreement when it failed to give Dr. McDonald a certificate of completion when he passed the USMLE III. He states the Resident Agreement and the incorporated Resident Physician Manual gives no deadline for passing the USMLE III. He further argues CMEF breached the contract by failing to engage in remediation and grievance procedures listed in the Resident Physician Manual incorporated by reference in the contract.

{¶28} The parties have established the existence of a contract. There is no dispute Dr. McDonald and CMEF entered into a contract for Dr. McDonald to perform his PGY3 with CMEF. The term of the second Resident Agreement for PGY3 began on July 1, 2003 and ended on December 31, 2003. Dr. McDonald's responsibilities as a resident with CMEF were outlined in the Resident Agreement:

> The Resident shall devote full-time effort to performing satisfactorily in all areas of the residency program including, without limitation, demonstrating didactic and clinical competency and displaying appropriate, professional behavior. General responsibilities are outlined in the Resident Physician Manual, which is attached as Exhibit A and incorporated in this Agreement by reference. The Resident must also abide by the then-current Human Resources and Hospital policies of each institution to which the Resident may rotate. To the extent that these policies are in conflict with, and/or inconsistent with Exhibits A and/or A-1, the latter Exhibits shall be controlling. Aultman Hospital reserves the right to amend Exhibit A and its Human Resources and Hospital policies from time to time at its sole discretion. The position of housestaff physician entails provision of care commensurate with the housestaff's level of advancement and competence, under the general supervision of appropriately privileged attending teaching staff. This includes:
>
> - Participation in safe, effective and compassionate patient care;
> - Developing an understanding of ethical, socioeconomic and medical legal issues that affect graduate medical education and how to apply cost containment measures in the provision of patient care;
> - Participation in the educational activities of the training program and, as appropriate, assumption of responsibility for teaching and supervising other residents and students, and participation in institutional orientation and education programs and other activities involving the clinical staff;
> - Participation in institutional committees and councils to which the housestaff physician is appointed or invited;
> - Performance of these duties in accordance with the established practices, procedures and policies of the institution and those of its programs, clinical departments and other institutions to which the housestaff physician is assigned, including, among others, state licensing requirements for physicians in training, where these exist;
> - Participation in the evaluation of the quality of education provided by the hospital; and
> - Assistance in recruiting new residents to the institution.

{¶29} The Resident Agreement outlined the program responsibilities:

CMEF shall offer the Resident a postgraduate training opportunity in a community hospital setting.  CMEF agrees to provide the Resident the following support, benefits and conditions of employment.

A) <u>Financial Support</u>: See Exhibit A-1 incorporated in this Agreement by reference.

The Resident shall receive an annual stipend in the amount of $42,972.00, payable biweekly and an annual Education Allowance in accordance with the post-graduate year.

B) <u>Benefits</u>: See Exhibit A.

1. Sick Time, Bereavement Pay, Jury Duty
2. Healthcare Insurance, Life Insurance, Short-Term Disability
3. Professional Liability Insurance
4. Vacation Time
5. Leave of Absences
6. On-Call Rooms, Meal Allowances, and Lab Coats

C) <u>Other Responsibilities and Policies</u>: See Exhibit A.

1. Duty Hours
2. Supervision
3. Harassment Policy
4. Physician Impairment
5. Promotion and Retention
6. Dismissal and Other Forms of Corrective Action
7. Grievance
8. Moonlighting
9. Reduction/Closure
10. Medical Services
11. Counseling/Psychological Service

{¶30} The parties agree as to the existence of a contract.  The next issue to analyze is whether there is a genuine issue of material fact that Dr. McDonald performed the terms of the contract and CMEF did not perform its responsibilities under the contract in order for Dr. McDonald's claim of breach of contract to survive summary

judgment.   The relevant terms of the contract to answer these questions are found in

the Resident Physician Manual.  It states:

> PROMOTION AND REAPPOINTMENT
>
> Residents are promoted on the basis of acceptable periodic clinical evaluations, which may be supplemented by other evaluation methods.
>
> In most instances, contractual appointment is equated with academic promotion.  Under some circumstances, a resident may be reappointed to repeat an academic year.
>
> The decision to reappoint at the same level or promote a resident to the next level of post-graduate training shall be done annually.  The decision will be made after review of the resident's performance.
>
> The following factors are used in the decision to promote:
>
> 1. All evaluations of the resident's performance
>
> 2. Pass the USMLE [United States Medical Licensing Exam] II to be promoted to a PGY-2 (excluding Transitional)
>
> 3. Pass the USMLE III to complete the residency program
>
> 4. Any other criteria deemed appropriate by the Program Director
>
> The Program Director will communicate reappointment and promotional decisions to the GMERC [Graduate Medical Education and Research Committee].   All appointments (same and next academic year) are restricted to a maximum period of 12 months with no implied promise of extension.   Each resident is required to sign a contract, signifying acceptance of the appointment.
>
> If significant deficiencies in the resident's performance are identified, a decision may be made not to promote.  As much advance written notice as possible will be given to this resident.  When remediation is decided upon rather than promotion, the resident's Residency Program Director, when appropriate, will arrange a plan, which includes monitoring performance.  The Program Director may choose to extend the existing contract for the length of time necessary to complete the remediation process.  The resident may use the grievance procedure to appeal the decision not to promote.

{¶31} Dr. McDonald states the contract is silent as to a date or deadline by which the resident must pass the USMLE III exam in order to be eligible to complete the CMEF residency program.  The thrust of his argument is that CMEF failed to perform under the contract when it did not give Dr. McDonald a certificate of completion because (1) the contract does not state a deadline for passing the USMLE III, (2) Dr. McDonald passed the USMLE III, and (3) Dr. McDonald completed his clinical rotation CMEF with satisfactory marks.  CMEF argues in the contrary that on December 31, 2003, the contractual relationship between CMEF and Dr. McDonald terminated.  CMEF gratuitously extended the date by which Dr. McDonald could pass the USMLE III, but Dr. McDonald failed to meet those multiple deadlines.  In order to complete the CMEF residency program, Dr. McDonald was required to pass the USMLE III; the question is, pursuant to the contract, *when* was he required to pass the USMLE III exam?

{¶32} The parties' arguments as to the terms of the contract require this Court to engage in contract interpretation.  When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties.  *Westfield Ins. Group v. Affinia Dev., L.L.C.*, 2012-Ohio-5348, 982 N.E.2d 132, ¶ 21 (5th Dist.).  We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.  In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement.  When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.  "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning."  *Sunoco, Inc. (R & M) v. Toledo Edison, Co.,* 129 Ohio St.3d 397, 2011-Ohio-

2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶33} On February 27, 2002, Dr. McDonald entered into a Resident Agreement of Appointment with CMEF for Dr. McDonald's PGY3. The term of the contract was from July 1, 2002 to July 1, 2003. On January 14, 2003, during the term of Dr. McDonald's PGY3 contract with CMEF, Dr. McDonald entered into another Resident Agreement with CMEF that extended the term of the PGY3 contract by six months. The term of appointment was from July 1, 2003 to December 31, 2003. The total term of Dr. McDonald's PGY3 with CMEF was one year, five months, and thirty days.

{¶34} The Resident Physician Manual, incorporated into the Resident Agreement by reference, states in the "Promotion and Reappointment" section: "In most instances, contractual appointment is equated with academic promotion. * * * All appointments (same and next academic year) are restricted to a maximum period of 12 months with no implied promise of extension. Each resident is required to sign a contract, signifying acceptance of the appointment." The factors by which CMEF uses to determine whether to promote a resident are:

1. All evaluations of the resident's performance

2. Pass the USMLE [United States Medical Licensing Exam] II to be promoted to a PGY-2 (excluding Transitional)

3. Pass the USMLE III to complete the residency program

4. Any other criteria deemed appropriate by the Program Director.

{¶35} Dr. McDonald's contractual appointment with CMEF terminated on December 31, 2003. Dr. McDonald testified in his deposition that as of December 31, 2003, he was no longer engaged in clinical rotations with CMEF pursuant to the resident

duties outlined in the Resident Agreement. Likewise, CMEF was no longer providing Dr. McDonald with the program responsibilities, such as benefits, outlined in the Resident Agreement after December 31, 2003.

{¶36} The contract states that appointments are restricted to a maximum period of 12 months with no implied promise of extension. Dr. McDonald's contractual appointment for his PGY3 was for approximately seventeen months. The contract further states that in most cases, contractual appointment is equated with academic promotion. A factor for academic promotion is to pass the USMLE III for completion of the residency program. Considering the language of the Resident Agreement and incorporated Resident Physician Manual as a whole, it is unambiguous that a resident must pass the USMLE III within the contractual appointment period. Dr. McDonald's contractual appointment terminated on December 31, 2003. Accordingly, we find no genuine issue of material fact that Dr. McDonald failed to perform under the terms of the Resident Agreement and Resident Physician Manual by his failure to timely pass the USMLE III exam. Dr. McDonald's failure to perform obviates a claim for breach of contract against CMEF.

{¶37} CMEF granted Dr. McDonald extensions to pass the USMLE III until January 2005. Assuming for sake of argument that the letters from CMEF to Dr. McDonald granting Dr. McDonald additional time to pass the USMLE III exam were contract extensions rather than mere gratuities, there is no dispute of fact that Dr. McDonald did not pass the USMLE III exam until October 18, 2005.

{¶38} Ultimately, CMEF informed Dr. McDonald it could not grant Dr. McDonald a certificate of completion for the CMEF residency program due to Dr. McDonald's

failure to timely pass the USMLE III exam. CMEF further stated because Dr. McDonald's final rotation with CMEF terminated twenty months previously, CMEF could not verify Dr. McDonald's clinical skills. Dr. McDonald submitted a letter to CMEF on December 7, 2005, requesting CMEF to reverse its decision. Dr. McDonald argues that pursuant to the decision not to promote, Dr. McDonald should have been permitted to utilize the grievance procedures as follows:

> If significant deficiencies in the resident's performance are identified, a decision may be made not to promote. As much advance written notice as possible will be given to this resident. When remediation is decided upon rather than promotion, the resident's Residency Program Director, when appropriate, will arrange a plan, which includes monitoring performance. The Program Director may choose to extend the existing contract for the length of time necessary to complete the remediation process. The resident may use the grievance procedure to appeal the decision not to promote.

(Resident Physician Manual, Promotion and Reappointment). Dr. McDonald states the failure to allow Dr. McDonald utilize the grievance procedure outlined in the Resident Physician Manual is a further breach by CMEF.

{¶39} The trial court held that this argument could not support a claim for breach of contract because the contract upon which the claim was based terminated on December 31, 2003. We agree. Just as Dr. McDonald was no longer performing the duties required of him by the Resident Agreement, he was no longer able to exercise the procedures outlined in the Resident Agreement and incorporated Resident Physician Manual.

{¶40} Upon our de novo review, we find reasonable minds can only conclude CMEF did not breach the Resident Agreement of Appointment and incorporated

Resident Physician Manual when it denied Dr. McDonald a certificate of completion for Dr. McDonald's failure to timely pass the USMLE III exam.

{¶41} The sole Assignment of Error of Plaintiff-Appellant Paul McDonald, M.D. is overruled.

### CONCLUSION

{¶42} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN